In the Matter of the Application for the Removal of AARON J. LEVY from the Office of Justice of the Municipal Court of the City of New York.

First Department, November 4, 1921.

**Courts — proceeding to remove justice of Municipal Court of City of New York on charges — failure to show respondent was engaged in carrying on business within inhibition of Municipal Court Code, § 2, and that he was not a bona fide resident of district from which he was elected — " to carry on a business " defined.**

Petition for the removal of a justice of the Municipal Court of the City of New York based on the charge that he was engaged in carrying on business within the inhibition of Municipal Court Code, section 2, will be dismissed, where it appears that grounds for the charge are that he held ten per cent of the capital stock of a corporation of which he was not an officer or director, and that his sole connection with a newspaper in which he owned stock was the writing of an occasional article in the interest of Americanism.

Evidence as to the allegation that respondent had moved out of the district in which he was elected examined, and *held*, as a matter of law and fact, that he resides in the district from which and for which he was elected.

The term " to carry on a business " implies such a relation to the business as identified the person with it and imposes upon him some duty or responsibility in connection with its management.

PROCEEDING for the removal of a justice of the Municipal Court of the City of New York upon charges.

The proceeding was brought by Benjamin Schlesinger and others, under article 6, section 17, of the Constitution and section 132 of the Code of Criminal Procedure, for the removal of Aaron J. Levy from the office of justice of the Municipal Court of the City of New York. (See 192 App. Div. 550.)

*Leonard M. Wallstein,* for the petitioners.

*Brackett, Todd, Wheat & Wait,* for the respondent.

CLARKE, P. J.:

The respondent was duly elected a justice of the Municipal Court of the City of New York for the Second Municipal District in November, 1913, for a term of ten years beginning January 1, 1914. The petition alleges that as such justice he is, and at all times hereinafter mentioned was, forbidden by law to engage in any other business, and is and was forbidden by law to detail or cause any officer, employee or subordinate of the city of New York to do or perform any service or work outside of his public office work or employment, and is and was required by law to devote his whole time and capacity, so far as the public interest demands, to the business of his office.

That ever since January 1, 1914, the respondent has for his personal pecuniary profit engaged in business and business enterprises, to wit, the business of ladies' tailoring and dressmaking, the business of exhibiting motion picture plays, the business of printing and publishing a newspaper known as the *Warheit,* and the business of owning, managing, directing and controlling a certain corporation, known as H. Milgrim & Brothers, Inc., engaged in the business of ladies' tailoring and dressmaking, and certain other corporation or corporations, the name or names of which are now unknown to the petitioners, engaged in the business of conducting motion picture playhouses, and a certain other corporation, organized

First Department, November, 1921.          [Vol. 198

under the laws of the State of New York, known as the Warheit Publishing Corporation, engaged in the business of printing and publishing a newspaper known as the *Warheit;* and as the proprietor and owner, or one of the proprietors, owners and large stockholders of said H. Milgrim & Brothers, Inc., the business of directing, negotiating and adjusting the relations and disputes between said corporation and its employees and workmen and their labor unions, the business of organizing, directing and acting as the second vice-president of the Coutouriers' Division of the National Garment Retailers' Association, an association of manufacturing employers engaged in the business of ladies' tailoring and dressmaking; and as owner or one of the proprietors, owners and large stockholders of said H. Milgrim & Brothers, Inc., and as its representative and as member and official of said Coutouriers' Division of the National Garment Retailers' Association, the business of directing, negotiating and adjusting the relations and disputes between persons, firms and corporations engaged in the ladies' tailoring and dressmaking business and their employees and workmen and the labor unions of the latter, and the business of establishing uniform customs and usages in the ladies' tailoring and dressmaking business, the reform of abuses therein, the collection and dissemination of information interesting to those engaged in said trade, the adjustment of grievances and the handling of disputes between those engaged in said trade and the general promotion of the interests and welfare of said trade.

That the respondent willfully engaged in said business and business enterprises and each of them, well knowing that he was forbidden by law to engage in the same or any of them, and while so engaged he willfully neglected his official duties as a justice of the Municipal Court, and that he willfully and repeatedly detailed a Municipal Court attendant, one Irving Weber, to attend, accompany and assist him in connection with and in relation to one or more of the business enterprises in which respondent was and is unlawfully engaged as aforesaid.

In a supplemental charge it is alleged that on or about May 1, 1917, the respondent ceased to be and has not been a resident or elector of the second municipal district, borough of Manhattan, city of New York, for which he was elected, and

that at the general elections held in 1917, 1918 and 1919 he voted in the fourth Assembly district from premises 307 East Broadway, notwithstanding that on the day of each such respective election he did not reside at said address or elsewhere in said election district.

The answer admits meeting various union officials and workingmen as well as the Milgrims, in an endeavor to adjust differences between employer and employee; admits that respondent is a stockholder in a corporation, H. Milgrim & Brothers, Inc., and that he was present at what is characterized in the moving papers as his office in the Milgrim Building a considerable part of the time. He admits that there was detailed to him an employee, one Irving Weber, a Municipal Court attendant, who accompanied him and assisted him in his labors. He admits that he was present at various meetings of the Coutouriers' Division of the National Garment Retailers' Association, and that he was elected to office in that body. He admits that during parts of the years of 1917, 1918 and 1919 his family was located at No. 66 Fort Washington avenue and No. 70 Lenox avenue, respectively. .

Upon these admissions the petitioners ask that the respondent be removed from office. There are supporting affidavits and there is a mass of contradictory affidavits. Many of the allegations in the petition are mere conclusions of law.

As to the facts, I may dispose at once of the second charge, viz., that respondent had moved out of the district in which he was elected, and had thereafter illegally voted in said district. There is no substance to the charge. Respondent resided for many years at 307 East Broadway, and continued to pay rent and maintain a telephone service there until June, 1920. In May of that year he moved to 290 East Broadway and his telephone under the old number was transferred to his new home. While his family spent the summer in the country, and during some of the winter months of the years specified his wife and child visited at his brother-in-law's, and with his wife's mother, he continued to reside and still resides as matter of law and fact in the district from which and for which he was elected.

As to the main charge, respondent holds ten per cent of the capital stock of H. Milgrim & Brothers, Inc., having

acquired his 30 shares on the 26th of September, 1918. The other ninety per cent, or 270 shares, are divided equally between the three Milgrims. He never was and is not now an officer or director in said corporation. He says that in 1918 Charles Milgrim kindly offered him without cost the mezzanine floor in the Milgrim Building, consisting of a very large room and two small rooms, entirely cut off and separated from that part of the building used exclusively for his business purposes. To this mezzanine floor there was an entrance, and from it an exit also, separate and apart from the entrance and exit used to and from the business. Respondent states that he never owned any stock in moving picture houses, never was an officer or director of the corporation owning and publishing the *Warheit;* while he did own some of its stock, he never managed the publication or did any act or thing in connection with its business. All he ever did was to write a series of historical and other articles over his own name in the interest of higher Americanism when he thought the exigencies were such as to require it.

Respondent admits that upon the solicitation of the people now bringing the charges against him, he did undertake to act in certain labor disputes for the purpose of bringing about peace and harmony in the trade.

It was unfortunate, I think, that he should have accepted the offer of the Milgrims to have his chambers in their building. He says that it was impossible to get proper accommodation in any of the Municipal Court buildings, where he needed chambers as presiding justice to attend to the work of his office. But establishing his office in that building gave color, together with his activity in attempting to settle the labor disputes, to the charge that he was running the Milgrim's business.

I cannot find in these papers grounds for removal. It seems to me that the law is laid down in *Matter of Deuel* (127 App. Div. 640). That was a proceeding instituted for the removal of a justice of the Court of Special Sessions for a violation of the provisions of section 1416 of the Revised Greater New York Charter (Laws of 1901, chap. 466) prescribing the qualifications of a justice of the Court of Special Sessions: " Nor shall any such justice hold any other public

office, or carry on any business, or practice as an attorney or counselor at law in any court in this State, or act as referee or receiver; but each such justice shall devote his whole time and capacity, so far as the public interests demand, to the duties of his office."

Said statute is in all respects similar to section 2 of the Municipal Court Code (Laws of 1915, chap. 279) which provides that " no justice shall engage in any other business or profession, or hold any other public office, or act as referee or receiver, but each justice shall devote his whole time and capacity, so far as the public interest demands, to the duties of his office " — the statute respondent is charged with having violated and hence susceptible of the same interpretation.

Said Mr. Justice INGRAHAM, writing for the court: " I have no doubt but that a persistent and intentional violation of the prohibition contained in this statute would be a sufficient cause for removal. The object of this statute is not only to insure the prompt and efficient discharge of the duties of a justice of the Court of Special Sessions, but also to prevent a justice of the court from making such connections and having such relations with others as would justify a question as to the impartial and proper performance of his judicial duties. The justice is required to be an attorney of ten years' standing, and upon his acceptance of the office he is required to relinquish the practice of the law and is prohibited from acting as referee or receiver. He can hold no other public office, can carry on no business, but is required to devote his whole time and capacity to the duties of his office. In the Standard Dictionary ' To carry on ' is defined: ' To keep up; keep going; maintain; manage;' and in the Century Dictionary, ' To manage or be engaged in; continue to prosecute; keep in progress;' and I think, to bring a person within the prohibition against carrying on a business, there must be such a relation to the business as imposes upon the person charged an obligation or responsibility to it, a responsibility for its management, the assumption of its control or an obligation to perform duties in relation to it. The term ' to carry on a business ' implies such a relation to the business as identifies the person with it and imposes upon him some duty or responsibility in connection with its management. It is much easier

First Department, November, 1921. [Vol. 198

to illustrate the distinction by concrete instances than by a general definition. I assume that it would not be a violation of this statute for a justice of the court to accept a position as executor or trustee of an estate, although that estate was connected with a going business, so long as the executor or trustee was not the active manager of such a business. A trustee or executor could settle the estate, could invest the trust property and collect the income and perform such incidental duties in relation to the estate without it being said that he was engaged in carrying on business, although he would be entitled to his fees for the performance of such duties. So, it seems to me that a person could be a director or officer of a corporation so long as the duties of his office did not impose upon him the duty to manage the corporation of which he was an officer. In other words, he could be an executor, trustee, director or officer without carrying on business; but in either one of these positions the duties which he was required to perform by accepting the office might be such as would require him to carry on a business and be charged with the management and control of it and to be so connected with it that he could be said to carry on the business. It seems to me that it would be a violation of this statute for one of the justices of the Court of Special Sessions to be a partner in any active business, although he could say that he did not devote thereto any of the time that the public interests required that he should devote to his office as such justice. It would be a violation of this statute for a justice of the Court of Special Sessions to accept a position as an officer of a corporation engaged in an active business which required that he should take charge of or manage such business or exercise control over it. It would be a violation of his duty to accept an employment in connection with an active business which would require him to perform duties in relation to it; but on the other hand the mere acceptance of an office in a corporation which conducted a business, the duties of which office did not require him to assume any control over it or to direct its management, or to be responsible for the business that it conducted, would not be a violation of this provision. * * *

" I do not find it proved that this relator accepted any office in this corporation that imposed upon him any active

duties in relation to the corporation itself, or the business that it conducted. He was vice-president of the corporation, but charged with no specific duties in relation to it. There is no evidence that he actively engaged in the conduct of the business of the corporation; that he was responsible, either to the corporation or to its stockholders, for the conduct or management of the business, or that he actively interfered in any way in relation to it. In fact, the evidence is all the other way. Certainly if no one did anything more for this business than the respondent did, or was under obligation to do, the business would not have been carried on at all, and the conclusion that I have arrived at is that the charge of a violation of section 1416 of the charter is not sustained."

An examination of the voluminous affidavits in this case has satisfied me that under the law as laid down in *Matter of Deuel (supra)* the respondent was not engaged in carrying on business within the inhibition of the statute, and that he was a *bona fide* resident of 307 East Broadway for years up to May, 1920, when he with his family moved to 290 East Broadway, where they have since resided and now reside.

My conclusion is that the petition should be dismissed.

DOWLING, SMITH, PAGE and GREENBAUM, JJ., concur.

Proceeding dismissed. Settle order on notice.